## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

KELLY WILSON,

              Plaintiff,

    v.

HH SAVANNAH, LLC; HHC TRS
SAVANNAH, LLC; HYATT
CORPORATION,

              Defendants.

CIVIL ACTION NO.: 4:20-cv-217

## <u>O R D E R</u>

    Presently before the Court is Defendants HH Savannah, LLC ("HH"), HHC TRS

Savannah, LLC, ("HHC"), and Hyatt Corporation's ("Hyatt") Motion for Summary Judgment.[1]

(Doc. 60.)  This case arises from a slip and fall that occurred at the Hyatt Regency Savannah Hotel

(the "Hotel") when Plaintiff Kelly Wilson stepped out of the shower in her room.  (See doc. 60, p.

2; doc. 66, p. 1; see also generally doc. 46.)  Plaintiff alleges that her fall was caused by

Defendants' negligence and seeks to hold Defendants liable for the injuries she sustained when

she fell.  (Doc. 46.)  Defendants filed the at-issue Motion for Summary Judgment, relying on

various affirmative defenses and arguing, *inter alia*, that Plaintiff has failed to create a genuine

dispute of fact regarding whether Defendants had knowledge of any hazardous condition.  (Doc.

60.)  Plaintiff filed a Response, (doc. 65), and Defendants filed a Reply, (doc. 69).  For the reasons

---

[1]  In their Motion, Defendants argue that summary judgment is warranted with respect to Plaintiff's claims
against HH because HH relinquished possession and control of the Hotel prior to Plaintiff's fall.  (Doc. 60,
pp. 20–21.)  Plaintiff does not oppose summary judgment with respect to HH.  (Doc. 65, p. 9.)  Accordingly,
the Court **GRANTS** Defendants' Motion with respect to Plaintiff's claims against HH, (doc. 60), and, in
using the term "Defendants" in this Order, the Court will be referring to remaining Defendants HHC and
Hyatt.

set forth below, the Court **GRANTS in part and DENIES in part** Defendants' Motion. (Doc. 60.)

## BACKGROUND

### I. Admissions of Fact Set Forth in Defendants' Statement of Material Facts

Before setting forth the factual background, the Court must address Defendants' argument that the facts set forth in their Statement of Material Facts ("SMF") must be deemed admitted because Plaintiff failed to dispute them. (See doc. 69, pp. 2–5.) Southern District of Georgia Local Rule 56.1 ("L.R. 56.1") requires a party moving for summary judgment to file, "in addition to the brief, . . . a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof." S.D. Ga. Local Rule 56.1. Under L.R. 56.1, "[e]ach statement of material fact shall be supported by a citation to the record." Id. Pursuant to L.R. 56.1, Defendants filed a SMF in conjunction with their Motion for Summary Judgment and supporting brief. (Doc. 61.) Defendants' SMF complies with L.R. 56.1 because each statement of fact includes a citation to the record. (See id. at pp. 1–10.)

Federal Rule of Civil Procedure 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed [to] support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Furthermore, pursuant to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Moreover, this Court's Local Rule 56.1 provides that "[a]ll material facts set forth in the statement [of material fact] required to be served by the

moving party will be deemed to be admitted *unless controverted by a statement served by the opposing party.*"  L.R. 56.1 (emphasis added).

Here, pursuant to L.R. 56.1, Plaintiff filed a Response to Defendants' Motion for Summary Judgment, (doc. 65), as well as a stand-alone document titled, "Plaintiff's Response to Defendants' . . . [SMF]" ("Plaintiff's SMF Response"), (doc. 66).  Defendants argue that Plaintiff's attempts to dispute certain facts set forth in Defendants' SMF "are lacking . . . and . . . should be deemed admitted," and that their Motion "should be granted on this basis alone."   (Doc. 69, pp. 2–3; see id. at pp. 4–5.)  Defendants are correct that some of the denials in Plaintiff's SMF Response violate Rule 56(c) because they are not supported with a citation to pertinent portions of the record.  (See doc. 66, ¶¶ 11, 14–16); see Allen v. United States, No. 1:15-cv-147, 2018 WL 934895, at *1 n.2 (S.D. Ga. Feb. 16, 2018) ("[G]eneralized denials, provided without citations to particular parts of materials in the record, are insufficient to satisfy [Rule 56(c)]."); see also Futch v. Chatham Cnty. Det. Ctr., No. 4:10-cv-192, 2012 WL 1557336, at *2 (S.D. Ga. May 2, 2012) ("Where the party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to [Local Rules], such fact is deemed admitted by the respondent.") (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302 (11th Cir. 2009)).  For example, Paragraphs 11 and 16 of Plaintiff's SMF Response merely state that "Plaintiff's testimony speaks for itself," and Paragraphs 14–16 contend, without citing to any evidence, that there is a fact question as to whether the water accumulated on Plaintiff's bathroom floor while she showered.  (See doc. 66, ¶¶ 11, 14–16.)  Accordingly, pursuant to Rule 56(e), the Court will deem undisputed the facts which correspond to Plaintiff's denials that are not supported with citation to the record.

Notwithstanding the fact that many of the matters set forth in Defendants' SMF may be considered undisputed, the Court declines Defendants' request to deem admitted the entirety of their SMF. "[S]tatements of fact may be deemed true only so far as they are supported by the evidentiary materials . . . ." Osborn v. Whites & Assocs. Inc., No. 1:20-cv-02528-TWT-AJB, 2021 WL 6113656, at *2 n.3 (N.D. Ga. Nov. 16, 2021), *report and recommendation adopted*, No. 1:20-CV-2528-TWT, 2021 WL 6113625 (N.D. Ga. Dec. 3, 2021) (citing United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004)). Problematically, certain facts set forth in Defendants' SMF are not supported by the evidentiary materials cited therein. As discussed in Note 4, infra, Paragraph 19 of Defendants' SMF, which contends that "Plaintiff's Hotel bathroom was inspected and cleaned by housekeeping prior to her arrival," relies on speculative, inconsistent testimony. (Doc. 61, p. 7 (quoting doc. 60-8, pp. 31, 37).) Additionally, Paragraph 18 mischaracterizes the testimony cited in support of the purported fact that "[i]n the two years prior to Plaintiff's fall, there had only been two other falls in all of the Hotel bathrooms."[2] (Id. (quoting doc. 60-8, pp. 8–9).) Moreover, even if the Court were to deem admitted the entirety of Defendants' SMF, Defendants would not be, as they contend, entitled to summary judgment on this basis alone. "[A]fter deeming the movant's statement of undisputed facts to be admitted . . ., the district court must [still] review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) (internal quotations omitted). Indeed, the Court "must make an independent review of the record before deciding" a motion for summary judgment. United States

---

[2] Defendants cite testimony of Lori Valenzuela, the Hotel's director of operations since 2020, in support of this fact. However, Valenzuela did not testify that there were only two falls in the Hotel's bathrooms in the two years prior to Plaintiff's fall. Rather, Valenzuela affirmed opposing counsel's statement that "Hyatt [had] *identified* two prior falls on the property involving specifically bathroom falls," both of which occurred within one year of Plaintiff's fall. (Doc. 60-8, p. 8; see id. at pp. 8–11.)

v. Delbridge, No. 1:06-CV-110 (WLS), 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008).  This is true even where a motion for summary judgment is deemed wholly unopposed.  See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004); see also Mann, 588 F.3d 1303.  Accordingly, the Court declines to grant summary judgment merely because some of Plaintiff's denials are insufficient, and the Court will instead address the merits of Defendants' Motion.

## II.     Factual Background

### A.     Identity of Defendants and their Relationship to the Hotel

This case involves a fall that occurred on March 28, 2018, at the Hotel. (See generally doc. 46.)  When the fall occurred, HH owned the real property where the Hotel was located, although it did not operate or manage the Hotel.  (Doc. 61, p. 1; doc. 66, p. 1.)  HH leased the Hotel to Defendant HHC, which contracted with Defendant Hyatt to manage and operate the services at the Hotel.  (Doc. 61, p. 2; doc. 66, p. 1.)  While Hyatt contracted with a hospitality company, Hospitality Staffing Solutions, LLC ("Hospitality") (which is not a party to this lawsuit), to provide cleaning and janitorial services inside the Hotel, Hyatt alone was responsible for the Hotel's day-to-day operations.  (Doc. 61, p. 2; doc. 66, p. 1; see also doc. 60-3, pp. 13–14.)

### B.     Plaintiff's Fall

On March 28, 2018, Plaintiff traveled to the Hotel to attend a company retreat.  (Doc. 61, p. 2; doc. 66, p. 1.)  Plaintiff checked into her room mid-morning and left shortly thereafter to eat lunch and attend a team-building activity.  (Doc. 61, p. 2; doc. 66, p. 1.)  Later that evening, Plaintiff returned from dinner and decided to take a shower before retiring to bed.  (Doc. 61, p. 2; doc. 66, p. 1.)  This was the first time Plaintiff used the shower in her room, which was a "walk-in" style with a sliding glass door and a small step up to enter.  (Doc. 61, pp. 2–3; doc. 66, p. 1;

doc. 60-4, pp. 30, 32.)  Plaintiff testified that she placed a towel on the floor in front of the shower and, before turning on the water, stepped in the shower on the side opposite the shower head and adjacent toilet.  (Doc. 60, pp. 2–3; doc. 66, p. 1; <u>see</u> doc. 60-4, pp. 30–32.)  According to Plaintiff, she completely closed the glass doors, turned to the left to face the shower head—which was below the top of the glass door—and turned on the water.  (Doc. 61, p. 3; doc. 66, p. 1; doc. 60-4, pp. 32–34.)  Plaintiff testified that water "was coming out normal like it would in the shower," but also was "spewing" from the shower head in a leftward direction towards the glass door.  (Doc. 60-4, p. 33.)  Plaintiff stated that the water trailing off to the left side was a "constant," "medium stream," although she did not notice if it was "spraying over the glass door."  (Doc. 61, p. 3; doc. 66, p. 1; doc. 60-4, pp. 32–34, 36.)  According to Plaintiff, she never adjusted the showerhead in any way—either before or after noticing the stream of water—and estimated that she remained in the shower for "probably" five minutes.  (Doc. 61, p. 3; doc. 66, p. 1; doc. 60-4, p. 36.)  Plaintiff stated that she altered her shower routine once she noticed the stream by showering "faster" and "hurr[ying] to get the soap out of [her] hair."  (Doc. 60-4, pp. 36–37.)  Yet, Plaintiff also testified that she "obviously didn't know [water] was going outside the shower" and that she took a "normal shower."  (<u>Id.</u> at p. 36.)

After finishing her shower, Plaintiff grabbed a towel that she had draped over the top of the sliding glass door and wrapped it around her body.  (Doc. 61, pp. 3–4; doc. 66, p. 1; doc. 60-4, pp. 38.)  Plaintiff testified that she stepped down out of the shower and onto the towel she had laid on the floor, at which point she slipped and fell, striking her face on the vanity counter and injuring her right shoulder, right leg, and left knee.  (Doc. 61, p. 4; doc. 66, p. 1; doc. 60-4, pp. 38–41; <u>see</u> doc. 59-3, p. 1.)  According to Plaintiff, she fell because the entire bathroom floor was flooded with water.  (Doc. 61, p. 4; doc. 66, p. 1; <u>see</u> doc. 60-4, pp. 39–40.)  Plaintiff said that

there was "so much water [o]n the floor" that she had to dry herself off after her fall and the floor had to be mopped.  (Doc. 61, p. 4; doc. 66, p. 1; doc. 60-4, p. 39.)  Plaintiff also testified that there was water "around the toilet," which was adjacent to the leaking shower head.  (Doc. 60-4, pp. 32, 39–40.)  However, Plaintiff stated that she did not notice any water on the floor prior to her fall, including when she was drying herself off prior to exiting the shower.  (Doc. 61, p. 4; doc. 66, p. 1; doc. 60-4, p. 39.)  Plaintiff also testified that although she could not see the bathroom floor while she was in the shower because the shower's glass doors were tinted, there was nothing "preventing [her] from seeing the floor if [she] were looking at it" once the doors were opened.  (Doc. 61, p. 4; doc. 66, p. 1; 60-4, pp. 48–49.)

After her fall, Plaintiff contacted the front desk to inform Hotel management that she had fallen and needed assistance.  (Doc. 61, p. 4; doc. 66, p. 2; 60-4, p. 43.)  Milan Grbic, Hyatt's manager on duty, and Corey Ladson, a member of the Hotel's engineering department, went to Plaintiff's room shortly after her fall.  (Doc. 61, pp. 4–5; doc. 66, p. 2; 60-4, p. 44; 60-5, p. 11.)  Grbic testified that Plaintiff told him that she slipped and fell when she got out of the shower because "the shower head was leaking[] and . . . caused the shower to leak over the . . . sliding glass door."  (Doc. 60-5, p. 12; see doc. 61, p. 5; doc. 66, p. 2.)

The Hotel produced a Guest Incident Report (the "Incident Report") concerning Plaintiff's fall, dated March 28, 2018.  (Doc. 59-3.)  According to the Incident Report, Plaintiff "stated the shower head burst and was spilling all over the floor causing her to fall."  (Id. at p. 1.)  The Incident Report also states that "[e]ngineering confirmed the shower head was loose and then fixed it in a matter of seconds."  (Id.)  Indeed, during Ladson's deposition, he affirmed the following statement attributed to him in the Incident Report:

> Walked into the room, turned water on, noticed it was leaking from the shower head, enough to hit against the glass, but not enough to go over the shower glass door.  There

was excessive water on the floor, with two towels placed down.  I tightened the shower head, and it stopped leaking.  Left the room.

(Doc. 60-6, pp. 35–36; see doc. 59-3, p. 4.)

> **D.**    **The Hotel's Inspection Procedures and Evidence Concerning Whether Plaintiff's Room Was Inspected Prior to Her Stay in March 2018**

According to Clyde Sanders, the Hotel's director of engineering, Hyatt had a policy, practice, and procedure in March 2018 to ensure that shower heads were properly functioning. (Doc. 60-7, p. 13; see doc. 59, p. 2.)  Specifically, Hyatt points to two inspection protocols that were in place at the time of Plaintiff's fall: (1) the "Guest Room 12 Point Flash Inspection Program" ("Flash Inspection") and (2) the "Room Maintenance Inspection (RMI) Program" ("RMI").  (Doc. 60-7, pp. 69–78, 93–102; see id. at pp. 13, 23–26; see also doc. 59, p. 2.)  Flash Inspections are completed by members of the third-party housekeeping team, Hospitality, and are designed "to ensure guest room cleanliness and working order."  (Doc. 60-7, p. 96; see id. at p. 22.)  The Flash Inspection's twelve-point checklist asks, in pertinent part, whether: (1) the "shower/tub is completely clean and amenities are replaced"; (2) the "toilet is completely clean and in working order"; and (3) the "sink is completely clean and in working order and amenities are replaced."  (Id. at p. 97.)  According to the Flash Inspection Strategy Guide, the Flash Inspection Program "allows all colleagues to conduct quick guest room inspections daily," although, "[a]t a minimum, all rooms should be inspected at least once per month."  (Id. at p. 96 (emphasis omitted).)  Sanders testified that although the Flash Inspection check list does not explicitly require housekeeping staff to check whether the shower is properly functioning, "they are trained to report any malfunction with any items in [the] guest room."  (Id. at pp. 23–24.) Furthermore, Sanders stated that "housekeeping staff [is] required to turn on the shower every time they clean a room" because water is needed "in order to properly utilize the chemical" used to

clean the showers.  (Id. at p. 24.)  Similarly, Valenzuela, the Hotel's director of operations, testified that while Flash Inspections do not directly cover "the proper functioning of the shower," a room attendant "would have to physically turn on the shower" in order to clean the shower because Hospitality does not use a "self-cleaning chemical."  (Doc. 60-8, pp. 33–34.)  Thus, according to Valenzuela, the room attendant would identify any issues with the shower's functioning while cleaning the shower during a Flash Inspection.  (See id. at p. 34.)  Yet, Grbic testified that "only more experienced housekeepers" turn on "the shower in order to clean the floor and the walls inside the shower" and, thus, it is not done "a hundred percent of the time after somebody check[s] out."  (Doc. 60-5, p. 37.)

 RMIs are thirteen-point maintenance inspections completed by the Hotel's maintenance staff in order to "address any existing issues" or "failed steps that could impact the working order of a guest room."  (Doc. 60-7, p. 72; see id. at pp. 22, 25.)  According to the RMI Strategy Guide, RMIs should be completed at least once per quarter.  (Id. at p. 72; see also id. at pp. 13, 26.)  Pertinently, the RMI checklist asks maintenance staff to verify the following: (1) "Do all drains flow quickly? (bathroom, shower, and vanity)" and (2) "Is the water pressure and temperature acceptable? (bathtub, shower, vanity, time to temperature, etc.)."  (Doc. 60-7, p. 73.)  Sanders testified that these components of the checklist ensure the proper functioning of the shower and shower head.  (Id. at p. 26.)

 Since at least 2016 (including when Plaintiff's fall occurred), the Hotel has used an automated checklist called "HotSOS" (referred to as "HotSauce") to complete Flash Inspections and RMIs.  (See id. at pp. 14, 72–75, 96, 98–99; doc. 60-8, p. 24.)  Sanders testified that, "[i]f a housekeeper or supervisor saw something going wrong in one of the rooms," he or she should input that into HotSauce. (Doc. 60-7, p. 14.)  Indeed, Ladson testified that Hospitality would report

to someone in the engineering department via HotSauce if a "shower head was not functioning properly, for whatever reason." (Doc. 60-6, p. 25.)  However, Valenzuela testified that the Hotel's guest rooms were "not always physically inspected by a . . . person that would . . . inspect in a HotSauce device or do a checklist." (Doc. 60-8, p. 30.)  According to Valenzuela, "the room attendant[s] [are] trained . . . [to] essentially inspect their . . . rooms . . . as part of the process of cleaning their room[s]," and the room attendant who cleaned Plaintiff's room would not "necessarily input [whether they actually inspected the room prior to Plaintiff's arrival] into HotSauce itself." (Id. at pp. 30–31.)  Similarly, Ladson testified that not every member of the cleaning staff possessed a device to input the results of Flash Inspections, and those who did not have such a device had to report maintenance issues to a floor supervisor for placement into HotSOS. (See doc. 60-6, pp. 26–27.)

HotSOS data is stored on the Hotel's computer network and is purged every two years. (Doc. 60-7, pp. 21, 26–27; see doc. 59, p. 3; doc. 63, p. 5.)  Hyatt has no records of any Flash Inspection or RMI occurring in Plaintiff's Room prior to her arrival in March of 2018.[3] (Doc. 60-7, p. 27; doc. 60-8, pp. 31–32.)  However, Valenzuela testified that Plaintiff's room "would have been inspected at least by the room attendant before releasing it . . . back into . . . use so that

---

[3] Plaintiff filed a Motion for Spoliation Sanctions, in which she sought, *inter alia*, a rebuttable presumption that the contents of the purged HotSOS data—i.e., the reports of Flash Inspections and RMIs of Plaintiff's Hotel room prior to her fall—would have been unfavorable to Defendants. (Doc. 59.)  The Court granted the motion in part with respect to Hyatt, finding that some form of sanctions are appropriate because Plaintiff was prejudiced by Hyatt's failure to preserve electronically stored information that was in its control despite the foreseeability of litigation. (Doc. 72.)  However, the Court declined to grant Plaintiff's "vague[] request" for the aforementioned rebuttable presumption and ordered the parties to submit additional briefing to determine an appropriate sanction. (Id. at p. 25.)  Ultimately, the Court determined that the appropriate sanction is to allow the parties to present evidence to the jury "concerning the loss and likely relevance of the deleted HotSOS data" and to permit the jury, "with appropriate instructions from the Court, [to] consider that evidence, along with all the other evidence in the case, in making its decision." (Doc. 77, p. 9.)  However, the Court declined to rule on the precise scope of admissible evidence regarding the deletion of HotSOS data. (Id. at pp. 5–6.)

[Plaintiff] could occupy it" because her room "was occupied the day prior" to her arrival.  (Doc. 60-8, p. 31.)  According to Valenzuela, Hospitality "would have physically cleaned the room from the previous guest, identified if there were any working order opportunities and reported those before turning [the room] over."[4]  (Id. at p. 37.)  Additionally, when asked if he remembered whether someone from Hospitality reported a malfunctioning shower head in March 2018, Ladson could only recall that someone reported something "about a shower head."  (Doc. 60-6, pp. 25–26.)

## II.   Procedural History

Plaintiff filed this action on March 19, 2020, seeking to hold Defendants liable for the injuries she sustained when she slipped and fell at the Hotel on March 28, 2018.  (Doc. 1.)  Plaintiff's Third Amended Complaint, which is the operative pleading, asserts one count of negligence and one count of negligence per se against each Defendant.[5]  (See doc. 46, pp. 4–11.)  The crux of Plaintiff's claims is that her fall and resulting injuries were caused by Defendants'

---

[4]  Citing Valenzuela's testimony, Paragraph 19 of Defendants' SMF contends, *inter alia*, that "Plaintiff's Hotel bathroom was inspected and cleaned by housekeeping prior to her arrival given that it was occupied the day before she arrived." (Doc. 61, p. 7.)  In their Reply, Defendants argue that this portion of Paragraph 19 should be deemed admitted because "Plaintiff has not properly controverted this fact" pursuant to Rule 56(c).  (See doc. 69, pp. 2–5.)  As noted above, "the Court deems admitted only the facts contained in [a] [s]tatement of [m]aterial [f]acts for which [there is] . . . sufficient support."  Encompass Home & Auto Ins. Co. v. Stevens Hale & Assocs., No. 4:19-cv-79, 2022 WL 3330150, at *1 n.1 (S.D. Ga. Aug. 11, 2022); see also American Serv. Ins. Co. v. Webber's Transp., LLC, No. 4:20-cv-13, 2022 WL 3702059, at *3 (S.D. Ga. Aug. 26, 2022).  Valenzeuela's testimony does not unequivocally establish that Plaintiff's room was cleaned before she checked in to the Hotel.  Valenzuela merely assumed that Hospitality "*would have*" cleaned and inspected Plaintiff's room prior to her arrival because it was occupied the day before her stay.  (Doc. 60-8, pp. 31, 37.)  In fact, Valenzuela testified later that she only "*believe[d]*" that [Plaintiff's] room was [or] *would have been* occupied that day and turned over that day for her" and admitted that she didn't know whether somebody checked out of Plaintiff's room the same day Plaintiff checked in.  (Id. at p. 37 (emphasis added).)  Valenzuela also conceded that she was not aware of "any documentation" that Plaintiff's room was inspected prior to her arrival, and that, in fact, she "would not be able to obtain that" because it had been purged.  (Id. at pp. 31–32.)  Thus, because this portion of Paragraph 19 is not adequately supported by Valenzuela's testimony, the Court declines to deem it admitted.

[5]  Plaintiff styles Counts I, III, and V as "Negligence" and Counts II, IV, and VI as "Negligence Per Se." (Doc. 46, pp. 4–11.)

failure to maintain the shower head in her Hotel room, which, she alleges, "was shooting water over the shower glass door and onto the bathroom floor[,] creating a hazardous condition." (Id. at p. 3; see id. at pp. 4–11.) According to Plaintiff, Defendants "knew, or in the exercise of reasonable care should have known, of th[is] dangerous condition, or created th[is] condition either through the acts of [their] employees, in [their] negligent maintenance of the subject shower head, or in [their] negligent method of operation." (Id. at p. 4.) Furthermore, Plaintiff alleges that "Defendants should have corrected the condition[] and/or warned Plaintiff of its existence." (Id.) Plaintiff prays for, among other relief, compensatory damages and attorneys' fees and litigation expenses. (Id. at p. 11.)

Defendants filed the at-issue Motion for Summary Judgment, arguing, *inter alia*, that summary judgment is warranted on Plaintiff's claims because (1) Defendants lacked constructive knowledge that the shower head in Plaintiff's room was defective or posed a hazard, (2) Plaintiff had superior knowledge of the existence of such a hazard, and (3) Plaintiff assumed the risk. (Doc. 60.) Defendants filed a Response, (doc. 65), and Plaintiff filed a Reply, (doc. 69).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v.

<u>Philip Morris USA</u>, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  <u>Moton v. Cowart</u>, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  <u>See</u> <u>id.</u> (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  <u>Anderson</u>, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  <u>Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty.</u>, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing <u>Rodriguez v. Sec'y for Dep't of Corr.</u>, 508 F.3d 611, 616 (11th Cir. 2007)).  Thus, the Court will view the record and all reasonable inferences that can be drawn therefrom in Plaintiff's favor.  However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Id.</u> (citation and emphasis omitted).

**DISCUSSION**

I.    **Plaintiff's Negligence-Based Claims**

    A.    **Negligence and Premises Liability Law**

Plaintiff's Complaint asserts claims of negligence and negligence per se based on her slip and fall at the Hotel on March 28, 2018.  To prevail on a cause of action for negligence under Georgia law, a plaintiff must establish the essential elements of duty, breach of duty, proximate causation, and damages.  Black v. Ga. S. & Fla. Ry. Co., 415 S.E.2d 705, 707 (Ga. Ct. App. 1992). Concerning the duty owed to Plaintiff, Georgia's premises liability statute, O.C.G.A. § 51-3-1 ("Section 51-3-1"), provides that the owner or occupier of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe.[6]  "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge[] and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises."  Robinson v. Kroger Co., 493 S.E.2d 403, 408–09 (Ga. 1997).

However, in Georgia, "proof of a fall, without more, does not give rise to liability on the part of a proprietor."  All Am. Quality Foods v. Smith, 797 S.E.2d 259, 261 (Ga. Ct. App. 2017) (quoting Ingles Mkts., Inc. v. Carroll, 765 S.E.2d 45, 47 (Ga. Ct. App. 2014)).  A property

---

[6] Plaintiff appears to base her negligence per se claims (Counts II, IV, and IV) on an alleged violation of Section 51-3-1.  However, "[t]his statute cannot support a claim for negligence per se."  Sanders v. QuikTrip Corp., 378 F. Supp. 3d 1177, 1194 (N.D. Ga. 2019) (quoting Burns v. Colonial Stores, 83 S.E.2d 259, 262 (Ga. Ct. App. 1954) (clarifying that a violation of a statutory provision is not negligence per se where "the liability described by th[at] [provision] is simply the common-law liability for injury to another through negligence")); see also Williamson v. Kidd, 15 S.E.2d 801, 802 (Ga. Ct. App. 1941) (indicating that prior provision of Georgia law which is virtually identical to Section 51-3-1 is a codification of "anciently recognized" common law establishing "the duty of a master to use ordinary care to keep his premises safe"). Plaintiff has not identified any other statute to support her negligence per se claims.  Therefore, Defendants are entitled to summary judgment on Plaintiff's negligence per se claims.  Sanders, 378 F. Supp. 3d at 1194.

owner/occupier is "not an insurer of the invitee's safety," but, rather, is "required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge." Robinson, 493 S.E. 2d at 408. Indeed, "[t]he true basis for an owner's liability is [its] superior knowledge of the existence of a condition that could subject [its] invitees to an unreasonable risk of injury." Garrett v. Hanes, 616 S.E.2d 202, 204 (Ga. Ct. App. 2005). Thus, "[t]o support a premises liability claim, a plaintiff must show that the proprietor had superior knowledge—either actual or constructive—of the hazard that caused the plaintiff's injury." Hartman v. Clark, 801 S.E.2d 66, 67 (Ga. Ct. App. 2017). It follows that if the owner lacked actual or constructive knowledge of the hazard, the owner is entitled to summary judgment. Drew v. Istar Fin., Inc., 661 S.E.2d 686, 689 (Ga. Ct. App. 2008). Furthermore, "[w]hether a hazardous condition exists is the threshold question in a slip and fall case." Season All Flower Shop, Inc. v. Rorie, 746 S.E.2d 634, 638 (Ga. Ct. App. 2013).

### B. Existence of a Hazard

Defendants first argue that summary judgment is warranted because "Plaintiff has failed to present any evidence that her Hotel shower amounted to a hazard." (Doc. 60, p. 14.) "Where the plaintiff cannot show the existence of a hazardous condition, she cannot prove the cause of her injuries and there can be no recovery because an essential element of negligence cannot be proven." Glynn-Brunswick Mem'l Hosp. Auth. v. Benton, 693 S.E.2d 566, 568 (Ga. Ct. App. 2010) (internal quotations omitted). Indeed, "the plaintiff must produce evidence of what foreign substance, condition, or hazard caused her to slip and fall," Taylor v. Thunderbird Lanes, LLC, 748 S.E.2d 308, 311 (Ga. Ct. App. 2013) (internal quotations omitted). "Guesses or speculation

which raise merely a conjecture or possibility [of a hazardous condition] are not sufficient to create

even an inference of fact for consideration on summary judgment." Benton, 693 S.E.2d at 568.

According to Plaintiff, she fell when she stepped out of the shower because the bathroom

floor was flooded with water that had leaked from the defective shower head.  (Doc. 46, p. 3.)

Defendants contend, however, that "there is no record evidence that [Plaintiff's Hotel shower] was

defective or otherwise posed an unreasonable danger."  (Doc. 60, p. 14.)  Defendants are incorrect.

There more than ample evidence in the record to support a determination that the shower head in

Plaintiff's hotel room was malfunctioning and that it caused a significant amount of water to

accumulate on the bathroom floor.  Defendants concede that the bathroom floor in Plaintiff's room

was dry before she entered the shower.  (Doc. 60, p. 16.)  Plaintiff testified that when she turned

on the shower, a "constant," "medium stream" of water was "spewing" from the shower head in a

leftward direction towards the shower's glass door.  (Doc. 61, p. 3; doc. 66, p. 1; doc. 60-4, pp.

32–34, 36.)  Grbic stated that when he went to Plaintiff's room after she phoned the front desk for

assistance after her fall, Plaintiff informed him that she slipped and fell while exiting the shower

because "the shower head was leaking[] and it caused the shower [water] to leak over the . . .

sliding glass door."  (Doc. 60-5, p. 12; see doc. 61, p. 5; doc. 66, p. 2.)  Indeed, the Incident Report

concerning Plaintiff's fall provides that Plaintiff "stated the shower head burst and was spilling all

over the floor causing her to fall."  (Doc. 59-3, p. 1.)  Notably, the Incident Report also indicates

that "[e]ngineering confirmed the shower head was loose," (id.), and Ladson affirmed his prior

statement (reproduced in the Incident Report) that he "turned [the] water on, [and] noticed it was

leaking from the shower head, enough to hit against the glass," and that "[t]here was excessive

water on the floor," (doc. 60-6, pp. 35–36; see doc. 59-3, p. 4).  In fact, Plaintiff testified that there

was "so much water [o]n the floor" when she fell that she had to dry herself off and the floor had

to be mopped.  (Doc. 60-4, p. 39; doc. 61, p. 4; doc. 66, p. 1.)  Plaintiff also stated during her deposition that there was "water around the toilet," which was adjacent to the leaking shower head. (Doc. 60-4, pp. 39–40.)  Based on the forgoing evidence, there is sufficient evidence from which a reasonable jury could infer that Plaintiff slipped and fell on a puddle of water that had accumulated on the bathroom floor because the shower head in her Hotel bathroom was malfunctioning.  Accordingly, summary judgment is not warranted on Defendants' first proffered ground.  See Alleman v. Carrabba's Italian Grill, LLC (Fla.), No. 4:21-cv-68, 2022 WL 2210065, at *3 (S.D. Ga. June 21, 2022) (finding that plaintiff presented sufficient evidence that a hazard existed where Plaintiff testified that "[i]mmediately after [she] fell," she "turned to look and . . . [saw] a small [liquid] spill" that appeared to be either "water or soda," and "specifically stated under oath that this liquid is what caused her foot to slip, resulting in her fall"); see also Dodson v. Belk, Inc., No. 1:16-CV-0416-CC, 2018 WL 2056566, at *4 (N.D. Ga. Feb. 21, 2018) (finding a question of fact existed as to whether water on a floor constituted a hazardous condition where the plaintiff testified that the water was "where she fell and that she saw the smear in the stream of water where she had slipped in it"); cf. Woodie v. Wal-Mart Stores E., LP, No. 1:07-CV-2523-RWS, 2008 WL 4542635, at *3 (N.D. Ga. Oct. 8, 2008) (finding insufficient evidence of a hazard on the floor where the plaintiff "testified that she [did] not have any information or knowledge concerning what alleged hazard was . . . present on the floor in the area of" her slip and fall).

### C.    Defendants' Knowledge of the Hazard

Next, Defendants argue that summary judgment is warranted because "the record is devoid of any evidence that [they] had any knowledge of a dangerous condition regarding the shower head in . . . Plaintiff's Hotel room."  (Doc. 60, p. 16.)  As noted above, "in order to recover for injuries

sustained in a slip-and-fall action, an invitee must prove . . . that the defendant had actual or constructive knowledge of the hazard." Robinson, 493 S.E.2d at 414.

### (1)    Actual Knowledge

Plaintiff contends that Defendants possessed actual knowledge that the shower head in her room was leaking.  (Doc. 65, p. 3.)   However, Plaintiff does not point to any evidence that Defendants actually knew of this hazard prior to Plaintiff's fall; rather, Plaintiff, in essence, requests a finding that Defendants had actual knowledge that the shower head was leaking based on Defendants' failure to preserve the HotSOS inspection data from Plaintiff's hotel room.  (Id.)  According to Plaintiff, the purged HotSOS data is the "best evidence concerning actual notice of the subject hazard."  (Id.)  Yet, as discussed in Note 3, supra, the Court already rejected Plaintiff's similar request for a rebuttable presumption that the content of the HotSOS data would have been unfavorable to Defendants.  (Doc. 72, p. 25; see doc. 59.)  Furthermore, Plaintiff fails to cite any authority—and the Court has not located any—which allows a court to make a finding of actual knowledge as a spoliation sanction.  Thus, the Court declines to make such a finding.  Accordingly, absent any evidence in the record that Defendants actually knew that Plaintiff's shower head was leaking prior to her fall, this case turns on whether constructive knowledge thereof can be imputed to Defendants.

### (2)    Constructive Knowledge

A plaintiff may establish a premises owner's constructive knowledge in one of two ways: (1) "by showing that an employee was positioned in the immediate vicinity and had the opportunity and means to discover and remove the hazard" or (2) by pointing to "evidence that the alleged hazard was present for such a length of time that it would have been discovered had the proprietor exercised reasonable care in inspecting the premises."  Blocker v. Wal-Mart Stores, Inc., 651

S.E.2d 845, 847 (Ga Ct. App. 2007).  There is no evidence that anyone other than Plaintiff—much less an employee of a Defendant—was in the immediate area of the hazard (i.e., in Plaintiff's hotel bathroom) when she fell.  In fact, Plaintiff testified that there was no one else in the Hotel room with her when she was taking a shower.  (Doc. 60-4, p. 43.)  Thus, Plaintiff's claim "falls into the second class of constructive knowledge cases."  Daniel v. John Q. Carter Enters., Inc., 460 S.E.2d 838, 839 (Ga Ct. App. 1995).

Regarding the second method of showing constructive knowledge, "[i]n order to prevail at summary judgment based on lack of constructive knowledge, *the owner* must demonstrate not only that it had a reasonable inspection program in place, but that such program *was actually carried out at the time of the incident*."  Alleman, 2022 WL 2210065, at *4 (quoting Sanderson Farms, Inc. v. Atkins, 713 S.E.2d 483, 487 (Ga. Ct. App. 2011) (emphasis added)); see also Johnson v. All Am. Quality Foods, Inc., 798 S.E.2d 274, 277 (Ga. Ct. App. 2017); Plymale v. Cheddar's Casual Café, Inc., No. 7:20-CV-102 (WLS), 2022 WL 988313, at *8 (M.D. Ga. Mar. 31, 2022). Additionally, "the plaintiff need not show how long the hazard had been present unless the owner has demonstrated its inspection procedures."  Johnson, 798 S.E.2d at 277.

Defendants are not entitled to summary judgment on this issue because they have not demonstrated that they had a reasonable inspection procedure in place that was carried out at the time Plaintiff fell.  Defendants argue that Hyatt "had a policy, practice, and procedure in March 2018 to ensure that shower heads were properly functioning, as indicated by the engineering department's quarterly inspections as well as daily cleaning by . . . Hospitality."  (Doc. 60, p. 22 (citing doc. 60-7, pp. 13–16, 22–26).)  While it is undisputed that Hospitality staff and the Hotel's engineering department conduct Flash Inspections and quarterly RMIs, respectively, of the Hotel's guest rooms (and were doing so and logging the results of those inspection in the HotSOS system

in March 2018), (doc. 60-7, pp. 13, 22–26; <u>see id.</u> at pp. 69–78, 93–102; <u>see also</u> doc. 60-8, p. 24;

doc. 61, pp. 6–7; doc. 59, p. 2; doc. 65, pp. 4–5), the Flash Inspection Strategy Guide provides that

Flash Inspections *can* be performed daily, but the "minimum" frequency for Flash Inspections of

a room is once per month, (doc. 60-7, p. 96 (emphasis omitted)).   However, "proof of the mere

existence of . . . customary [inspection and cleaning] procedures is insufficient," and Defendants

are not entitled to summary judgment unless they present "[e]vidence establishing an adherence to

customary inspection and cleaning procedures" at the time of the incident.  <u>Daniel</u>, 460 S.E.2d at

840 (emphasis added).  The parties agree that there is no record of any Flash Inspection or RMI

occurring in Plaintiff's Room prior to her arrival in March 2018 because the relevant HotSOS data

was purged.   (Doc. 60-7, p. 27; doc. 60-8, pp. 31–32; <u>see</u> doc. 59, p. 3; doc. 65, pp. 5–6.)

Additionally, Valenzuela's testimony, which is the only evidence Defendants point to in order to

show that Plaintiff's room was inspected prior to her arrival, is highly speculative and not based

upon personal knowledge.  (<u>See</u> doc. 60, pp. 16–17.)  Valenzuela, who began working at the Hotel

in January 2020, and, therefore, was not present at the Hotel on the date of Plaintiff's fall, (doc.

60-8, p. 7), estimated that Plaintiff's room "*would have been* inspected at least by the room

attendant before releasing it . . . back into . . . use so that [Plaintiff] could occupy it," (<u>id.</u> at p. 31

(emphasis added)).   Valenzuela assumed this was the case because, according to her, Plaintiff's

room "was occupied the day prior" to her arrival.  (<u>Id.</u>)  However, Valenzuela later hedged, stating

that she only "*believ[ed]"* that "somebody had checked out 24 hours before [Plaintiff] occupied

the room," and admitted she "[did not] know" whether "somebody check[ed] [out]" the day

Plaintiff arrived.   (<u>Id.</u> at p. 37 (emphasis added).)  Thus, viewed in the light most favorable to

Plaintiff, Valenzuela's testimony is inadequate to show that the showerhead in Plaintiff's room

was inspected at any specific time.  Similarly, Ladson's testimony that he recalled someone from

Hospitality reporting something "about a shower head" in March 2018 does not establish that Hotel staff followed its inspection protocols prior to Plaintiff's fall.   (Doc. 60-6, pp. 25–26.) Accordingly, "because Defendant[s] failed to establish that [the Hotel's] . . . inspection procedures were . . . followed at the time of the incident, . . . the Court cannot conclude as a matter of law that Defendant[s] lacked constructive knowledge of" the leaking shower head.  Alleman, 2022 WL 2210065, *4 (internal quotations and citations omitted); see, e.g., Plymale, 2022 WL 988313, at *9 (denying summary judgment where "Defendant presente[d] evidence that its inspection policy was in existence and in place but offer[ed] no direct evidence," such as "records or logs of any inspections," that the "policy was actively followed on the date of the incident"); Sanderson Farms, Inc., 713 S.E.2d at 488 (affirming denial of summary judgment on the issue of constructive knowledge because defendant failed "to introduce any evidence to show adherence to [its] inspection and cleaning procedure on the day of [plaintiff's] fall"); Ingles Mkts, Inc. v. Martin, 513 S.E.2d 536, 537–39 (Ga. Ct. App. 1999) ("[T]here was no . . . evidence that the floor was swept on the day of the incident or that Ingles otherwise complied with a reasonable inspection procedure.   Accordingly, . . .the trial court correctly denied Ingles' motion for summary judgment."); cf. Lomax v. Kroger Co., 824 S.E. 2d 629, 632 (Ga. Ct. App. 2019) (finding constructive knowledge where "the evidence . . . permitted a conclusion that Kroger failed to adhere to reasonable inspection procedures on the date of Lomax's fall, and therefore had constructive knowledge of the hazard").[7]

---

[7]  To the extent Defendants argue that summary judgment is warranted because there is no evidence that "any hazardous condition [existed] for a sufficient period of time such that Defendants should have discovered and addressed it," this argument fails.  (Doc. 69, pp. 7–8); see Johnson, 798 S.E.2d at 277 ("[T]he plaintiff need not show how long the hazard had been present unless the owner has demonstrated its inspection procedures."); see, e.g., Ingles Mkts., Inc., 513 S.E.2d at 539 ("[P]laintiffs were not required to show how long the liquid remained on the floor before the fall" because "there was no . . . evidence that . . . Ingles . . . complied with a reasonable inspection procedure.").

Moreover, even assuming a Flash Inspection was performed prior to Plaintiff's arrival, there is a genuine dispute as to whether such inspection would have been sufficient to reveal the alleged defect in the showerhead.  As both Valenzuela and Sanders recognized, neither the Flash Inspection nor RMI checklists explicitly require cleaning or engineering staff, respectively, to verify whether shower heads are in good-working order.  (See doc. 60-8, pp. 33–34; doc. 60-7, p. 24; see also id. at pp. 73, 97.)  Indeed, the plain language of the Flash Inspection checklist suggests that Hospitality staff *do not* check to see if the shower is functioning properly; while it does ask for verification regarding the toilet and sink, the checklist does not ask for verification that the shower is "in working order."  (Id. at p. 97.)  On the other hand, Valenzuela testified that Hospitality staff would identify whether the showerhead was working properly during a Flash Inspection because "they would have to physically turn on the shower" in order to clean it.  (Doc. 60-8, p. 34.)  Similarly, Sanders testified that he "know[s] from years of experience and working with the housekeeping team[] [that] they are trained to report any malfunction with any items in [a] guest room."  (Doc. 60-7, p. 24.)  Consistent with Sanders's testimony, Ladson testified that he recalled someone reporting something "about a shower head" in March 2018.  (Doc. 60-6, pp. 25–26.)  Yet, according to Grbic, housekeepers do not turn the shower head on when cleaning the shower "a hundred percent of the time after somebody check[s] out."  (Doc. 60-5, p. 37.)  Thus, in light of this conflicting evidence, *even if* Defendants had offered sufficient evidence that Plaintiff's room underwent a Flash Inspection prior to her arrival–which, again, they have not–they would not be entitled to summary judgment for lack of constructive knowledge.

### D.   Plaintiff's Superior Knowledge and Related Arguments (Open and Obvious Condition, Assumption of Risk, Proximate Cause)

Defendants next argue that summary judgment is warranted because Plaintiff had superior knowledge of the leaking showerhead.  (Doc. 60, pp. 14–17.)  According to Defendants, Plaintiff

"had immediate knowledge" that "water was spewing from the shower head and against the shower's sliding glass door" prior to entering the shower.  (Id. at p. 16.)  Yet, Defendants contend, Plaintiff "still voluntarily showered for five to ten minutes, completed her shower, and knowingly stepped out of the shower onto a wet bathroom floor, which was not wet prior to her entering the shower."  (Id.)  Thus, Defendants argue, Plaintiff "was in the best position to observe any alleged dangerous condition."  (Id. at pp. 16–17.)  Relying upon these purported facts, Defendants *also* contend that they are entitled to summary judgment because (1) "the shower head and water on the bathroom floor were open and obvious conditions", (id. at p. 17); (2) Plaintiff "assumed the risk of injury and is barred from recovery", (id. at p. 17); and (3) Plaintiff's own negligence—i.e., taking a shower despite her knowledge "of the allegedly defective shower head"—proximately caused her injuries, (id. at p. 20).[8]

None of these arguments are persuasive because there is conflicting evidence about whether Plaintiff knew that the showerhead was leaking water onto the bathroom floor—and was thereby aware that the bathroom floor was flooded—before she fell.  Plaintiff testified that she stepped in the shower, closed the door completely, and turned on the water, at which point she noticed that the shower head was spewing water towards the shower door.  (Doc. 61, p. 3; doc. 66, p. 1; doc. 60-4, pp. 32–34.)  According to Plaintiff, she did not notice if the shower head was spraying over the glass door, (doc. 61, p. 3; doc. 66, p. 1; doc. 60-4, p. 34), and she was not "aware [that] water was getting outside the shower," (doc. 60-4, p. 49).  She also stated that she took a

---

[8]  For example, with respect to Defendants' "open and obvious" argument, Defendants state, "Plaintiff saw the leaking shower head."  (Doc. 60, p. 17.)  Concerning assumption of risk, Defendants contend that "Plaintiff knew of the water spewing from the shower and onto the sliding glass door.  However, she chose to take a shower and allow the water to continue to spew for at least five to ten minutes."  (Id. at p. 18.)  Finally, concerning proximate cause, Defendants argue that "Plaintiff knew of the allegedly defective shower head and voluntarily caused or worsened the hazardous condition by taking a shower."  (Id. at p. 20.)

"normal shower" and "obviously didn't know [the stream] was going outside the shower." (Id. at pp. 36–37). On the other hand, Grbic testified that Plaintiff informed him that she fell because "the shower head was leaking[] and . . . caused the shower to leak *over the . . . sliding glass door*." (Doc. 60-5, p. 12 (emphasis added); see doc. 61, p. 5; doc. 66, p. 2.) The Incident Report also indicates that Plaintiff "stated the shower head burst and was spilling all over the floor causing her to fall." (Doc. 59-3, p. 1.) Plaintiff also, in contrast to other portions of her testimony, said that she showered "faster" and "hurried to get the soap out of her hair" once she noticed the showerhead was leaking, which plausibly suggests she was aware that the showerhead was leaking water outside the shower. (Id. at pp. 36–37.) Additionally, there is conflicting evidence about whether Plaintiff knew the floor was wet when she stepped out of the shower. Although Defendant contends that Plaintiff "knowingly stepped out of the shower onto a wet bathroom floor," (doc. 60, p. 16), Plaintiff testified that she did not notice any water on the floor prior to her fall, (see doc. 60-4, p. 38). Indeed, Plaintiff stated that, while she was in the shower, she could not see the bathroom floor because the shower's glass doors were tinted. (Doc. 61, p. 4; doc. 66, p. 1; doc. 60-4, p. 48.) Thus, there is a genuine dispute of fact as to whether Plaintiff knew that the water from the showerhead had leaked onto the bathroom floor or that the floor was wet when she fell after exiting the shower. Because Defendants' arguments that Plaintiff possessed superior knowledge, assumed the risk and proximately caused her injuries, and that the hazard was open and obvious are premised on these disputed facts, summary judgment is not warranted with respect thereto.[9]

---

[9] Moreover, summary judgment is not warranted with respect to Defendants' proximate cause argument because "questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases." Pruette v. Phoebe Putney Mem'l Hosp., 671 S.E.2d 844, 848 (Ga Ct. App. 2008). Given the genuine dispute as to Plaintiff's knowledge that the floor in her bathroom was wet to the point of being dangerous, this is not such a "plain and undisputed case[]." Id.

## II.    Attorneys' Fees and Expenses

Defendants additionally request summary judgment on Plaintiff's claims for attorneys' fees and expenses.  (Doc. 60, pp. 22–23.)  According to Defendants, summary judgment is warranted on these claims because there are "genuine disputes" concerning liability.  (Id.)  However, the Court finds that Defendants are entitled to summary judgment on a different basis: Plaintiff failed to specifically plead and pray for attorneys' fees.  O.C.G.A. § 13-6-11 ("Section 13-6-11") allows a jury to award litigation expenses when the defendant has acted in bad faith, been stubbornly litigious, or caused the plaintiff unnecessary trouble and expense.  Crucially, Section 13-6-11 applies only "*where the plaintiff has specially pleaded and made prayer*" for litigation expenses. Id. (emphasis added).  In the Third Amended Complaint, Plaintiff merely prays for "judgment against Defendants for attorneys' fees and expenses of litigation"; it neither refers to Section 13-6-11 nor alleges facts that would support a recovery of fees under this provision.  (Doc. 46, p. 11; see generally doc. 46.)  "A general request for attorney fees, without reference to [Section] 13–6–11 or the criteria set forth therein, is not the specific pleading contemplated by the statute."  Dep't of Transp. v. Ga. Television Co., 536 S.E.2d 773, 776 (Ga Ct. App. 2000).  Thus, because Plaintiff did not "specially plead for . . . [attorneys' fees and costs] as required by [Section 13-6-11]," her request for attorneys' fees fails.  Daniels v. Price Commc'ns Wireless, Inc., 562 S.E.2d 844, 846 (Ga Ct. App. 2002); see, e.g., id. (affirming trial court's denial of attorneys' fees because the plaintiff's complaint prayed solely for "attorney fees and costs of litigation"); Lines v. City of Bainbridge, 615 S.E.2d 235, 236 (Ga. Ct. App. 2005) ("Appellants make no reference in their complaint to [Section] 13–6–11 or the criteria set forth therein as a basis for their claim for attorney fees.  Thus they have not adequately pled for such an award under the statute.").

Moreover, even if Plaintiff had sufficiently pleaded for fees, there is no evidence that Defendants engaged in conduct that would authorize a jury to award attorneys' fees under Section 13-6-11.  As stated above, this provision authorizes litigation expenses only "where the defendant has acted in bad faith, . . . been stubbornly litigious, or . . . caused the plaintiff unnecessary trouble and expense."  O.C.G.A. § 13-6-11.  Plaintiff does not explicitly argue—much less point to any evidence—that Defendants acted in bad faith, were stubbornly litigious, or caused her unnecessary trouble and expense, (see generally doc. 65); she merely contends that fees are warranted because Defendants "engaged in spoliation by allowing critical evidence in this case [i.e., HotSOS data] to somehow disappear", (doc. 65, pp. 9–10).  To the extent that Plaintiff is arguing that Hyatt's alleged spoliation constitutes bad faith, this argument fails.  For purposes of Section 13-6-11, "[b]ad faith is bad faith connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen."  In re Equifax, Inc., Customer Data Sec. Breach Litig., 362 F. Supp. 3d 1295, 1345 (N.D. Ga. 2019) (internal quotations omitted).  "Bad faith requires more than 'bad judgment' or 'negligence,' rather [Section 13-6-11] imports a 'dishonest purpose' or some 'moral obliquity' and implies 'conscious doing of wrong' and a 'breach of known duty through some motive of interest of ill will.'"  Id.  Defendants' failure to preserve the HotSOS data occurred *after* Plaintiff's fall and is disconnected from their alleged failure to maintain the showerhead in her guest room.  Additionally, the Court already determined that Plaintiff failed to show that Hyatt's failure to preserve the HotSOS data was intentional or, in other words, that Hyatt acted with the intent to deprive Plaintiff of this information.  (Doc. 72, pp. 18–21.)  Accordingly, Hyatt's spoliation does not qualify as "bad faith" as that term is used in Section 13-6-11.

Based upon the forgoing, summary judgment is warranted as to Plaintiff's vague request for attorneys' fees and litigation costs in the Third Amended Complaint.

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendants HH, HHC, and Hyatt's Motion for Summary Judgment. (Doc. 60.) The Court **GRANTS** the Motion as to all claims against Defendant HH and **DIRECTS** the Clerk of Court to terminate Defendant HH on the docket of this case. The Court also **GRANTS** the Motion with respect to Plaintiff's request for attorneys' fees and litigation expenses and as to Plaintiff's negligence per se claims alleged in Count II, IV, and VI of the Third Amended Complaint. (Id.) However, the Court **DENIES** the Motion with respect to Plaintiff's negligence claims alleged against HHC TRS Savannah, LLC, and Hyatt Corporation in Counts I, III, and V of the Third Amended Complaint. (Id.)

**SO ORDERED**, this 26th day of September, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA